956 F.2d 271
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Jesus Jesse REYNA, Defendant-Appellee,
Jacqlynn Garrett, Rey Solis, Defendants.
 No. 91-1320.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1992.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and DAVID A. NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 A jury convicted Jesus Jesse Reyna of (1) conspiracy to possess with intent to distribute and distribution of marijuana, in violation of 21 U.S.C. § 846, and (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). The government appeals the district court's decision refusing to enhance Reyna's sentence for obstruction of justice. For the following reasons, we affirm.
 
 
 2
 Reyna and several associates obtained marijuana from Texas sources and transported the marijuana to Michigan. In Michigan, they stored, re-packaged, and sold the substance. While transporting marijuana from Texas to Michigan, one of Reyna's associates, Sam Walden, was stopped by a Missouri state trooper who discovered the contraband. Walden agreed to assist authorities in a controlled delivery of a portion of the marijuana. When Walden arrived at the residence of Reyna and Jacqlynn Garrett, Reyna's girlfriend and co-defendant, authorities videotaped Walden transferring the marijuana to Reyna and Garret. Subsequently, police officers executed a search warrant at the residence and seized nearly 100 pounds of marijuana, $20,000 in cash, drug records, and various packaging materials.
 
 
 3
 On December 13, 1989, a federal grand jury charged Reyna and several co-defendants with (1) conspiracy to possess with intent to distribute and distribution of marijuana, in violation of 21 U.S.C. § 846, and (2) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1). After a two-week trial, a jury convicted Reyna on both counts. Based upon a factual finding that Reyna was responsible for 1,400 pounds of marijuana in the conspiracy, the district court determined Reyna had a base offense level of 28 under the Federal Sentencing Guidelines. The government argued that during trial Reyna testified untruthfully several times and, hence, deserved a two-level enhancement under Sentencing Guideline § 3C1.1 for obstruction of justice. After refusing to enhance Reyna's sentence, the court sentenced Reyna to seven and one-half years in prison on the conspiracy count, with a concurrent sentence of five years on the possession count. The district court also imposed concurrent five-year and two-year periods of supervised released.
 
 
 4
 On appeal, the government argues that the correct application of the Sentencing Guidelines required the district court to enhance Reyna's offense level by two-levels because he perjured himself at trial. It contends that Reyna testified falsely as to the following facts. First, Reyna initially claimed that his only involvement in the marijuana conspiracy was limited to allowing others to use the basement of his house to store the substance and that he was not involved in the sell or distribution of the drug. On cross examination, however, Reyna admitted distributing the marijuana and collecting payments and sending them to a Texas source. Second, Reyna initially claimed that his girlfriend was not involved in and knew nothing about the marijuana dealings. On cross examination, however, Reyna gave leeway and admitted that his girlfriend was involved in the dealings. Third, Reyna claimed that an individual referred to as "Oscar" in taped conversations about the marijuana transactions was not his co-defendant Oscar Solis, but was an individual whom he identified as "Oscar Gonzalez." The government claims it is clear from the evidence adduced at trial that the "Oscar" referred to in the taped conversations was actually co-defendant Solis. Finally, the government claims Reyna denied making certain statements to a federal agent, but the agent testified that Reyna did, in fact, make these statements and the agent also testified as to the substance of Reyna's statements.
 
 
 5
 In refusing to enhance Reyna's sentence under § 3C1.1 for obstruction of justice, the district court stated:
 
 
 6
 The Court is satisfied that there should be no enhancement of Mr. Reyna's guideline score for obstruction of justice. The testimony that he gave, in an attempt to moderate his involvement and Ms. Garrett's involvement, didn't help him one whit, the jury was not deceived in any way, shape or form, and was more foolish than culpable.
 
 
 7
 I don't know why he took the witness stand. He would have been better advised to keep his mouth shut and not testify.
 
 
 8
 Under the circumstances, the Court is satisfied that the latitude given to the Court within the guideline range for the offense previously found is sufficient to deal with Mr. Reyna's conduct at trial.
 
 
 9
 When the government subsequently inquired whether the court was making a decision to indicate it believed that any of Mr. Reyna's testimony was truthful, the court responded, "no way."
 
 
 10
 We must accept the findings of fact that underlie the district court's sentencing decision unless the findings are clearly erroneous. 18 U.S.C. § 3742(e). A district court's findings of fact are not clearly erroneous unless we are left with a definite and firm conviction that the district court has made a mistake. See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). This court must also give due deference to the district court's application of the sentencing guidelines to the facts. 18 U.S.C. § 3742(e).
 
 
 11
 Section 3C1.1 of the Federal Sentencing Guidelines provides that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." United States Sentencing Commission, Guidelines Manual, § 3C1.1 (Nov. 1990). The application notes to § 3C1.1 set forth a non-exhaustive list of the types of conduct to which the enhancement applies. U.S.S.G. § 3C1.1, comment. (n. 3). Included as conduct worthy of the obstruction enhancement is "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n. 3(b)).
 
 
 12
 When applying § 3C1.1, a court should evaluate the defendant's testimony and statements in a light most favorable to the defendant. United States v. Head, 927 F.2d 1361, 1372 (6th Cir.), cert. denied sub nom. Black v. United States, 112 S.Ct. 144 (1991); U.S.S.G. § 3C1.1, comment. (n. 1). A false statement deserving application of the obstruction enhancement is one that, if believed, would tend to influence the issue under determination. Head, 927 F.2d at 1372. The defendant must also make the statement intentionally. Although § 3C1.1 is not designed to punish a defendant who exercises his constitutional right to testify at trial, see U.S.S.G. § 3C1.1, comment. (n. 1), it is designed to punish a defendant who perjures himself because there is no constitutional right for the defendant to commit perjury while testifying. United States v. Acosta-Cazares, 878 F.2d 945, 953 (6th Cir.), cert. denied, 493 U.S. 899 (1989).
 
 
 13
 Once the district court determines that a defendant intentionally testified untruthfully as to a material fact while under oath--in other words committed perjury--the district court must enhance the defendant's sentence under § 3C1.1 unless the court's findings of fact support a downward departure. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). See 18 U.S.C. § 3553(b) (Court shall impose sentence specified in the Sentencing Guidelines unless the court finds an aggravating or mitigating circumstance that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines).
 
 
 14
 Although this court has examined section 3C1.1 issues on numerous occasions, an examination of two of our cases should provide guidance on the application of the provision. First, in United States v. Hamilton, 929 F.2d 1126, 1130-31 (6th Cir.1991), the district court enhanced the defendant's sentence for obstruction of justice because the defendant had "told one bare-faced lie after another during his sentencing proceedings, and done so deliberately, to minimize ... the grievousness of the beating that this woman was subjected to." This court agreed that the defendant's statements were "perjurious attempts to materially influence the proceedings" and thus deserved a two-level enhancement for obstruction of justice. Id. at 1131. Second, in Alvarez, 927 F.2d at 302-03, the district court found that while under oath the defendant "lied openly, continuously, almost ridiculously before the jury." This court held that since the district court made a finding that the defendant had testified untruthfully as to a material fact, the district court acted appropriately in enhancing the defendant's sentence for obstruction of justice. Id. at 303.
 
 
 15
 The common thread running through cases like Hamilton and Alvarez is that once the district court has determined that the defendant intentionally testified untruthfully as to a material fact, an obstruction enhancement is required. However, a case like United States v. McDonald, 935 F.2d 1212 (11th Cir.1991), is distinguishable from cases like Hamilton and Alvarez. In McDonald, the government argued that the district court should have given the defendant a two-level enhancement for obstruction of justice because he perjured himself. Id. at 1218-19. Although the district court admitted that portions of the defendant's testimony were inconsistent with the testimony of more credible witnesses, the district court found that the inconsistencies did not rise to such a level so as to require an enhancement for obstruction of justice. Id. at 1219. The Eleventh Circuit, in upholding the district court's decision, stated:
 
 
 16
 With only a cold, paper record before it, an appellate court is severly hindered in evaluating whether a defendant perjured himself at trial. The district court is uniquely suited to make such a determination because it heard all the evidence and was able to observe a particular witness' demeanor and behavior on the witness stand.
 
 
 17
 Id.
 
 
 18
 We believe the instant case is more analogous to McDonald than to either Hamilton and Alvarez. The district court conceded that portions of Reyna's testimony were internally inconsistent and sometimes inconsistent with testimony of other witnesses. Apparently, however, the court did not feel Reyna had necessarily perjured himself and, thus, did not believe an obstruction enhancement was warranted. As in McDonald, this court is severely hindered in evaluating the record and determining whether Reyna perjured himself. Upon review of Reyna's statements in a light most favorable to him, we find no error in the district court's decision refusing to enhance Reyna's sentence.
 
 
 19
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 20
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 21
 The district court, as I understand it, concluded that Mr. Reyna testified untruthfully both as to the extent of his own involvement in the sale or distribution of the marijuana and as to the involvement of his girlfriend and his co-defendant. These are clearly material facts, and their materiality does not turn on whether the jury believed the testimony.
 
 
 22
 Where a defendant gives perjured testimony with respect to material facts, the sentencing guidelines make it mandatory that the offense level be increased by two steps. In the case at bar, such an increase would have produced a guideline range of imprisonment for 97 to 121 months. A downward departure from that range might have been justified here, but if the district court thought so, it needed to explain why. Accordingly, I would remand the case for resentencing.