NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1225
_____

UNITED STATES OF AMERICA

v.

RICHMOND YARMAI,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 2:19-cr-00427-001)
District Judge: Honorable Chad F. Kenney
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 17, 2020
_____

Before: GREENAWAY, JR., SHWARTZ and FUENTES, *Circuit Judges*.

(Opinion Filed:  February 4, 2021)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Appellant Richmond Yarmai challenges a guidelines enhancement of four levels for the use of a dangerous weapon during the robbery of a Wells Fargo bank in Philadelphia. The enhancement increased his guidelines calculation and his sentence. For the reasons discussed below, we will affirm the District Court's application of the enhancement.

## I. BACKGROUND

On May 30, 2019, Yarmai entered a Wells Fargo bank located in Philadelphia. Yarmai approached the teller's window and handed a note to the teller which stated he would shoot if he did not receive $15,000. Yarmai then pulled out a BB gun, which looked like a black semi-automatic handgun. Yarmai placed the BB gun on the teller's counter, on its side, with the muzzle pointing directly towards the teller. Both of Yarmai's hands were laid on the weapon in an attempt to cover it from others while still aiming the weapon at the teller. The teller handed Yarmai approximately $4,100. Yarmai took the money and fled the bank.

An investigation led to Yarmai's arrest and confession. Yarmai was charged by a grand jury in the Eastern District of Pennsylvania with three counts of bank robbery, in violation of 18 U.S.C. § 2113(a), and one count of armed bank robbery, in violation of 18 U.S.C. § 2113(d). Yarmai pleaded guilty to all four counts. The Presentence Investigation Report recommended, *inter alia*, that the District Court impose a four-level enhancement to the base offense level for a dangerous weapon "otherwise used," pursuant to U.S.

Sentencing Guidelines Manual § 2B3.1(b)(2)(D) (U.S. Sent'g Comm'n 2018) [hereinafter "U.S.S.G."].[1]

At the sentencing hearing, Yarmai objected to the four-level enhancement. However, the District Court concluded that Yarmai did not merely "brandish" the weapon, but instead crossed the line into "otherwise using" the weapon in the course of the robbery. The District Court applied the applicable four-level sentencing enhancement resulting in a sentence of 70 months' imprisonment.

This timely appealed followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the District Court's factual findings relevant to the Sentencing Guidelines for clear error and exercise plenary review over the District Court's interpretation of the Sentencing Guidelines. *United States v. Bell*, 947 F.3d 49, 54 (3d. Cir. 2020).

## III. DISCUSSION

On appeal, Yarmai challenges the enhancement of his sentence for "otherwise us[ing]" a dangerous weapon under U.S.S.G. § 2B3.1(b)(2)(D). Yarmai argues that during the relevant robbery, he merely "brandished" the weapon, which justifies only a three-level

---

[1] The armed bank robbery count is at issue on appeal.

enhancement under § 2B3.1(b)(2)(E), rather than "otherwise used" the weapon, which warrants a four-level enhancement under § 2B3.1(b)(2)(D).

We begin by examining the relevant guideline, U.S.S.G. § 2B3.1, which provides the base offense level for robbery and enhancements for specific offense characteristics, including:

> (A) If a firearm was discharged, increase by **7** levels; (B) if a firearm was otherwise used, increase by **6** levels; (C) if a firearm was brandished or possessed, increase by **5** levels; (D) if a dangerous weapon was otherwise used, increase by **4** levels; (E) if a dangerous weapon was brandished or possessed, increase by **3** levels; or (F) if a threat of death was made, increase by **2** levels.

§ 2B3.1(b)(2) (emphasis in original).

It is undisputed that Yarmai's BB gun is a "dangerous weapon" for sentencing purposes. Thus, we must determine whether the dangerous weapon was "brandished" or "otherwise used." The Sentencing Guidelines define the terms as follows:

> "Brandished" . . . means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present. . .

> "Otherwise used" . . . means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon.

U.S.S.G. § 1B1.1, cmt. 1(C) & 1(J).

Therefore, the question is whether holding the BB gun on its side with the muzzle facing the teller amounts to "otherwise using" the weapon. Our precedent suggests it does.

4

In *United States v. Johnson*, we found that the defendant had "otherwise used" a firearm when the defendant pointed a gun at the victim, threatened to shoot, and demanded money. 931 F.2d 238, 240–41 (3d Cir. 1991). In an identically named case a few years later, we agreed with the First Circuit's holding that:

> a person may "brandish" a weapon to "advise" those concerned that he possesses the general ability to do violence, and that violence is imminently or immediately available . . . . Altering this general display of weaponry by [for instance] specifically leveling a cocked firearm at the head or body of a bank teller or customer, ordering them to move or be quiet according to one's direction, is a cessation of "brandishing" and the commencement of "otherwise used."

*United States v. Johnson*, 199 F.3d 123, 127 (3d Cir. 1999) (quoting *United States v. LaFortune*, 192 F.3d 157, 161–62 (1st Cir. 1999)) (alteration and ellipsis in original).

We have affirmed that the "otherwise used" enhancement applied when a defendant "put a gun to the employee's head," *id.* at 125; "pointed a weapon at the store employee's neck, ordered to him to the ground, and then struck him with the weapon," *Bell*, 947 F.3d at 62; and "point[ed] a gun at the head of the assistant manager and order[ed] her to empty money into a garbage bag," *United States v. Orr*, 312 F.3d 141, 145 (3d Cir. 2002).

Here, Yarmai argues that he merely displayed the weapon, and that, due to the height of the teller's counter, he was forced to place the weapon on top of the counter in order to do so. Appellant claims that, under our 1999 *Johnson* decision, he did not go beyond generally displaying the weapon by, for example, levelling a cocked firearm at the teller.

5

*See* 199 F.3d at 127. However, the surveillance video leaves no doubt that the Yarmai held the weapon pointed directly at the teller.[2]

We have said that "[p]ointing a weapon at a specific person or group of people, in a manner that is explicitly threatening, is sufficient to make out 'otherwise use' of that weapon." *Johnson*, 199 F.3d at 127. The pointing of the muzzle directly at the teller in a way that is explicitly threatening surely also suffices to constitute "otherwise use" of the weapon. Additionally, Yarmai did not simply point the weapon, but he also made a specific threat to shoot in the note that he passed to the teller moments before doing so. Accordingly, in this instance, there was "a cessation of 'brandishing' and the commencement of 'otherwise us[ing].'" *Id.* (quoting *LaFortune*, 192 F.3d at 161–62).

Therefore, consistent with our precedent, the District Court correctly found that Yarmai's actions are precisely the type of conduct which satisfies "otherwise used" the weapon.

---

[2] Appellant argues that the enhancement should not be dependent merely upon the angle at which the weapon is displayed. In doing so, the Appellant points to the District Court's comment that if the "muzzle was pointed at a different direction . . . [the District Court might have] come up with a different conclusion." App. 128; We have said, however, that the "otherwise used" enhancement applies when a weapon is pointed "in a manner that is explicitly threatening." *Johnson*, 199 F.3d at 127. If the muzzle had been pointed in another direction, it may not have been explicitly threatening; however, because the weapon was pointed clearly and directly at the body of the teller, whether intentionally or not, after an explicit threat, Appellant's action became threatening and coercive. These actions crossed the line into "otherwise us[ing]" the weapon. *See Johnson*, 931 F.2d at 240 (affirming enhancement where defendant "did not simply point . . . a firearm, but actually leveled the gun at the head of the victim at close range and verbalized a threat to discharge the weapon").

**IV. CONCLUSION**

We will affirm the District Court's imposition of the guidelines enhancement for otherwise using a dangerous weapon.